## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| TACARA EDWARDS, *o/b/o* T.S., | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION NO. 13-00562-B |
| | * | |
| vs. | * | |
| | * | |
| CAROLYN W. COLVIN, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

## ORDER

Plaintiff Tacara Edwards (hereinafter "Plaintiff") brings this action on behalf of her minor child, T.S., seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for child supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* On October 30, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, this case was referred to the undersigned to conduct all proceedings through entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 20). Oral argument was waived. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.  __Procedural History__

Plaintiff protectively filed an application for supplemental security income benefits on behalf of her daughter T.S. on March 5, 2009, when T.S. was eight months old.[1] (Tr. 242).  Plaintiff alleged that T.S. has been disabled since February 1, 2009, due to bronchitis.[2] (Id. at 246).  Plaintiff's application was denied at the initial stage on April 22, 2009. (Id. at 127).  Plaintiff filed a timely Request for Hearing, and on December 17, 2010, Administrative Law Judge Michael L. Levinson (hereinafter "ALJ") held an administrative hearing, which was attended by Plaintiff, her daughter T.S. (who at the time was two and a half years old), and Plaintiff's attorney. (Id. at 32).

At the hearing, Plaintiff alleged for the first time that T.S. was also mentally retarded.  (Id. at 48).  In light of the new allegation of impairment based on mental retardation, the ALJ adjourned the hearing to obtain a review of T.S.'s records by a physician.  (Id. at 50).  On May 20, 2011, the ALJ held a second administrative hearing, which was attended by Plaintiff,

---

[1] T.S. was born on June 17, 2008.  (Tr. 227).

[2] At the time of her application on March 5, 2009, Plaintiff did not allege that T.S. was mentally retarded.  (Tr. 246). Similarly, in her "Disability Report-Appeal" form dated May 13, 2009, Plaintiff reported that T.S.'s only disabling medical condition was asthma, stating that it affects her breathing and sleeping.  (Id. at 256, 259-60).

her daughter T.S. (who at the time was approximately three years old), Plaintiff's attorney, and a medical expert, Dr. Juliet Hananian, M.D.  (Id. at 52).  On June 3, 2011, the ALJ issued an unfavorable decision finding that T.S. is not disabled.  (Id. at 116).  Plaintiff requested review of the ALJ's decision by the Appeals Council, and on November 3, 2011, the Appeals Council remanded the claim for further development of the record concerning the claimant's diagnosis of mental retardation.  (Id. at 124).  The Appeals Council directed the ALJ to further develop the record regarding the claimant's "possible" impairment of mental retardation by obtaining a consultative psychological examination.  (Id. at 124-25).  On March 5, 2012, the ALJ obtained a consultative psychological examination by Dr. Donald Blanton, Ph.D.  (Id. at 437).

On April 11, 2012, the ALJ held a third administrative hearing, which was attended by Plaintiff, her daughter T.S. (who at the time was three years and ten months old), and Plaintiff's attorney.  (Id. at 81).  On May 4, 2012, the ALJ issued a second unfavorable decision finding that T.S. is not disabled.  (Id. at 17).  Plaintiff requested review of that decision by the Appeals Council, and, after considering additional evidence submitted by Plaintiff, the Appeals Council denied Plaintiff's request for review on September 18, 2013.  (Id. at 1).

Thus, the ALJ's decision dated May 4, 2012, became the

final decision of the Commissioner. Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues on Appeal

> A.  Whether substantial evidence supports the ALJ's determination that claimant is not disabled as a result of her alleged mental retardation impairment?
>
> B.  Whether the Appeals Council erred in failing to adequately examine the additional evidence submitted by Plaintiff?

## III. Factual Background

As stated above, T.S. was born on June 17, 2008, and was eight months old at the time that her mother protectively filed an application for supplemental security income benefits on March 5, 2009, alleging that T.S. was disabled on the basis of bronchitis. (Tr. 242, 246). At the time of her first administrative hearing on December 17, 2010, T.S. was two and a half years old, and her mother at that time alleged disability on the basis of mental retardation as well. (Id. at 32, 48-50).

The record reflects that on November 11, 2010, when T.S. was approximately two and a half years old, her treating physician, Dr. Ashraf Syed diagnosed her with "moderate mental

retardation (MR) with hyperactivity." (Id. at 395). On March 5, 2012, at the age of approximately three years and nine months, consultative psychologist, Dr. Donald Blanton, Ph.D., opined that T.S.'s alleged mental retardation was "untestable," but, nonetheless, he diagnosed her with "mild mental retardation, *estimated*" and "attention deficit/hyperactivity disorder." (Id. at 437) (emphasis added).

The following month, at T.S.'s third administrative hearing conducted on April 11, 2012, T.S.'s mother, Ms. Edwards, testified that T.S. (who was three years and ten months old) was attending "Head Start" school, that she could say only "small words," that she was scheduled for speech therapy, that she had problems focusing, and that she had severe behavior problems.[3] (Id. at 86, 90-91, 91-95, 101-02). However, Ms. Edwards testified that T.S. could feed herself. (Id. at 96). Ms. Edwards also testified that T.S. was taking medication for ADHD but that it was not helping.[4] (Id. at 90).

---

[3] Plaintiff testified that T.S. hits her little brother, that she tried to suffocate him once with a pillow, that she eats her own feces approximately twice a week, that she beats herself in the head and pulls her own hair, and that the child tells Plaintiff, "I hate myself." (Tr. 91-93, 101-02).

[4] Plaintiff's medications include Risperdal and Vyvanse (for ADHD) and albuterol (for asthma). (Tr. 90, 97, 99). Plaintiff has not appealed the ALJ's findings with respect to T.S.'s asthma or bronchitis. The only medical conditions at issue on appeal are T.S.'s alleged mental retardation and ADHD. (Doc. 14).

## IV.   Analysis

### A.   Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.    Childhood Disability Law**

The Personal Responsibility and Work Opportunity Act of 1996, which amended the statutory standard for children seeking supplemental security income benefits based on disability, became effective on August 22, 1996.  See Pub. L. No. 104-193, 110 Stat. 2105 § 211(b)(2) (1996) (codified at 42 U.S.C. § 1382c).  The definition of "disabled" for children is:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

See 42 U.S.C. § 1382c(a)(3)(C)(i), 20 C.F.R. § 416.906.  The regulations provide a three-step sequential evaluation process for determining childhood disability claims. 20 C.F.R. § 416.924(a).

At step one, a child's age and work activity, if any, are identified to determine if he has engaged in substantial gainful activity.  At step two, the child's physical/mental impairments are examined to see if he has an impairment or combination of impairments that is severe.  Under the regulations, a severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than

7

minimal functional limitations." 20 C.F.R. § 416.924(c). To the extent the child is determined to have a severe impairment, at step three, the Commissioner must then determine whether the impairment or combination of impairments meets or is medically or functionally equal to an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfies the duration requirement. 20 CFR § 416.924.

A child's impairment(s) meets the listings' limitations if he or she actually suffers from limitations specified in the listings for the severe impairment. Shinn v. Commissioner of Soc. Sec., 391 F.3d 1276, 1279 (11th Cir. 2004). A child's impairment(s) medically equals the listings if his or her limitations are at least of equal severity and duration to the listed impairment(s). Id. (citing 20 CFR § 416.926). Where a child's impairment or combination of impairments does not meet or medically equal any listing, then the Commissioner must determine whether the impairment or combination of impairments results in limitations that functionally equal the listings. 20 CFR § 416.926a. To establish functional equivalence in step three, the claimant must have a medically determinable impairment or combination of impairments that results in marked limitations in two functional domains or an extreme limitation in one domain. 20 CFR § 416.926a(a). The six domains are: (1) acquiring and using information; (2) attending and completing

tasks; (3) interacting and relating to others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 CFR 416.926a.

### C.  **Discussion**

In the case *sub judice*, the ALJ determined that the claimant has not engaged in substantial gainful activity since March 5, 2009, the application date, and that she has the severe impairment of attention deficit hyperactivity disorder ("ADHD"). (Tr. 18).  The ALJ found the claimant's alleged mental retardation to be non-severe.  (Id. at 21).  The ALJ further found that the claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1, nor does she have an impairment or combination of impairments that functionally equals the listings.  (Id.).

With respect to the functional equivalence domains, the ALJ found that T.S. has "less than marked" limitations in the domain of health and physical well-being and "no limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for oneself.  (Id. at 23-24).  Accordingly, the ALJ concluded that, because T.S. does not meet or medically equal any of listings set forth in 20 CFR Part 404, Subpart P, Appendix 1, nor does she functionally equal

the listings by having an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, she is not disabled under the Act. (Id. at 25).

In determining that the claimant's mental retardation was non-severe, the ALJ made the following relevant findings:

> On February 14, 2011, the claimant was evaluated for a language delay and behavior problems at UAB (Exhibit 18F). The claimant was receiving speech therapy through Early Intervention Services (Exhibit 18F). Additional genetic testing was requested in an attempt to explain the claimant's developmental history. **The results of that testing were normal and it was recommended that the claimant return in two to three years for ongoing evaluation (Exhibit 18F).** The claimant returned to Dr. Syed on March 17, 2011, and her parents reported that she had "been doing well and responded with the medication fine (Exhibit 16F). They also reported that the claimant's appetite was good and her sleeping pattern was unchanged (Exhibit 16F).
>
> Juliet Hananian, M.D., [a board-certified pediatrician, who testified at the supplemental hearing held on May 20, 2011], testified that while the child's qualified diagnosed (sic) of mild mental retardation, was based entirely on the mother's statements as, according to the doctor, the child was too year (sic) to be reliably tested for confirmation. Dr. Hananian continued that a physical examination cannot be the basis of a mental or behavior diagnosis. I accept the testimony of Dr. Hananian and find that *there is no reliable evidence of either* mild mental retardation or asthma.

Moreover, the questionnaire completed by
Ashley Jones, the claimant's Head Start
teacher further confirms that the claimant
is not mentally retarded, just the contrary.
Ms. Jones advises that the claimant was in
regular, not special education, classes at
the Head Start program.  When asked how the
claimant performs academically, Ms. Jones
writes: "[Claimant] performs average
academically in comparison to other
children.  She knows basic skills for her
age group. [Claimant] understands and
comprehends the teacher's instructions. She
understands the basic skills taught in the
classroom, such as recognizing alphabets,
colors and numbers."  She continued,
"[Claimant] plays cooperatively with the
other children, makes friends, seeks
attention appropriately, expresses herself
very well, follows rules, respects and obeys
adults."  When asked how the claimant
interacts with and responds to teachers, Ms.
Jones stated, "[Claimant] respects and
obeys both adults in the classroom."

"The child will listen and follow given
instructions."  Ms. Jones indicated that the
claimant pays attention when she is spoken
directly to, stays focused and completes her
assigned tasks, and changes from one
activity to another without being
disruptive.  Ms. Jones stated that the
claimant "plays cooperatively with her
peers," "respects other children" and
"follows classroom instruction."  She
indicated that the claimant needed no
assistance with grooming, toileting,
dressing or eating. Ms. Jones stated that
her strengths and weaknesses were typical
for her age, and that no special attention
was needed in order for the claimant to
function within the classroom.  Ms. Jones
was also asked to rate the claimant's
limitations or deficits in each of the six
functional domains.  Ms. Jones indicated
that the claimant had "no limitations" in
any of these domains, although she indicated

that the claimant was frequently absent from class due to "asthma" (Exhibit 10E).

During his mental status examination, Dr. Blanton noted that the claimant "played and wiggled and talked and was very active throughout the day."   He noted that the claimant repeatedly ignored her mother's speech and verbal commands. The claimant's thoughts and conversation were simple but logical. Her associations were intact and her affect was normal. The claimant was alert, able to follow one-step directions and "correctly do simple vocabulary words." Dr. Blanton noted no problems with the claimant's speech, vision or hearing. Her gross and fine motor skills were within normal limits. Although Dr. Blanton estimated that her intelligence was well below average, he noted that the claimant was essentially un-testable due to her age and attention problems. Because of these limitations or restrictions, Dr. Blanton could only estimate mild mental retardation, although he did suggest that a formal intellectual evaluation be conducted in one year's time (Exhibit 22F).

The observations of Ms. Jones, the claimant's Head Start teacher, are not indicative of the traits typically found in a mentally retarded individual. Furthermore, there is simply no objective evidence showing that the claimant is actually mentally retarded, mildly or otherwise. Thus, these conditions constitute, at most, only slight abnormalities that cannot reasonably be expected to produce more than minimal, *if any*, functional limitations. Therefore, I find these conditions to be non-severe (20 CFR 416.921).

(Id. at 19-21) (emphasis in original).

Further, in determining that T.S. did not have an

impairment or combination of impairments that met, medically equaled, or functionally equaled the listings, the ALJ made the following relevant findings:

> The medical expert, Juliet Hananian, M.D., further testified that the claimant's impairments do not [meet or medically equal or] functionally meet or equal the requirements of any section of the Listings of Impairments in 20 CFR, Subpart P, Appendix 1, Regulation Number 4. I concur and do so find.
>
> Based on the requirements of 20 CFR 416.924a(a) and SSR 09-2p, I have considered all of the relevant evidence in the case record. "All of the relevant evidence" includes objective medical evidence and other relevant evidence from medical sources; information from other sources; **such as school teachers, family members, or friends; the claimant's statements** (including statements from claimant's parent(s) or other caregivers; and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community).
>
> July 2010 notes also show that the claimant was doing well on her current medication regimen without any side effects (Exhibit 19 F). Notes dated January 23, 2012, again show that the claimant was "doing well," and that she had yet another completely normal physical examination (Exhibit 21F). The final treatment note from Dr. Syed, dated March 19, 2012, documents reports that the claimant was "extremely hyper," defiant and difficult to manage. These notes are in stark contrast to her treatment notes covering the last sixteen months when she first began to see Dr. Syed. After sixteen months of stating that the claimant was "doing well" on her current medication

regimen Ms. Sanders reported the above symptoms and asked Dr. Syed for medication increase. Dr. Syed refused to increase the dosage of Risperdal, and offered to prescribe Vyvanse 20mg in conjunction with her current medication. Dr. Syed again reinforced firm discipline and a structured environment (Exhibit 23F).

As previously discussed, Dr. Blanton, Ph.D., evaluated the claimant on March 5, 2012, at the request of the Social Security Administration. The claimant's chief complaint was that her stomach hurt, although Ms. Sanders indicated that she suffered from behavior problems and mood changes.

The findings of the claimant's treating physician, Dr. Syed, have been considered and are justifiably afforded no weight regarding his assessment of mental retardation. Even though Dr. Syed is the claimant's treating physician, his findings are based only and solely on the subjective complaints of the mother absen[t] a scintilla of any objective evidence.

Dr. Syed first evaluated the child at two-and-a-half years old. His own notes show that the claimant met all developmental milestones at the appropriate time. If so, this is hardly indicative of any mentally retarded individual. I find that Dr. Syed's findings of ADHD are correct.

Dr. Syed is a pediatric neurologist and not a child psychologist, and he found that the claimant had no neurological deficits. For the aforementioned reasons, his opinion that the claimant may be mentally retarded is speculative, without any sufficient objective basis and afforded no evidentiary weight.

I afford great weight to the testimony of the medical expert, Julia Hananian, M.D., a

14

board certified pediatrician. Dr. Hananian
testified that the claimant had no severe
impairments.

As stated earlier, the opinion of the state
agency consulting physician, Dr. Robert
Heilpern, as set out in the Childhood
Disability Evaluation Form at Exhibit 4F,
has been given little weight, as the opinion
of Dr. Hananian is more consistent with the
medical evidence of record.

Likewise, Dr. Blanton's opinion that the
claimant suffers from ADHD is given great
weight. This finding is supported by
objective evidence contained within the
medical evidence of record. His finding of
*estimated* mental retardation, however, is
given no weight. As the child is too young
for a comprehensive evaluation to be
performed, this finding is only an estimate
and appears to be based on pure speculation.
Likewise, his findings of multiple "marked"
and "extreme" limitations, as reported on
the *Broad Functional Limitations* form, are
afforded no weight.

Dr. Blanton only evaluated the claimant one
time, and his opinions on this form are not
corroborated by the medical evidence of
record. Throughout her treatment with Dr.
Syed, the claimant was reportedly "doing
well." Dr. Blanton's report is based on
nothing other than a one-time examination.
His findings in this report are in no way
consistent with those of Ms. Jones, the
claimant's Head Start teacher. Ms. Jones
found no limitations whatsoever in any of
the six functional domains and these forms
were completed within two months of each
other.

**a. Acquiring and Using Information**

Acquiring and using information concerns how
well a child is able to acquire or learn
information, and how well a child uses the

information she has learned. This domain
involves how well children perceive, think
about, remember, and use information in all
settings, which include daily activities at
home, at school, and in the community (20
CFR 416.926a(g) and SSR 09-3p).

The claimant has no limitation acquiring and
using information.   While the claimant's
mother alleges limitations in this domain,
there is no medical evidence to support
those claims.  The claimant's teacher, Ms.
Jones, also found no limitations in this
domain, as did Dr. Heilpern. Accordingly, I
find that the claimant has no functional
limitations in this domain.

## b. Attending and Completing Tasks

This domain considers how well a child is
able to focus and maintain attention, and
how well she is able to begin, carry
through, and finish activities, including
the mental pace at which she performs
activities and the ease of changing
activities. Attending and completing tasks
also refers to a child's ability to avoid
impulsive thinking and her ability to
prioritize competing tasks and manage her
time (20 CFR 416.926a(h) and SSR 09-4p).

The claimant has no limitation in attending
and completing tasks. While the claimant's
mother alleges limitations in this domain,
there is no medical evidence to support
those claims. The claimant's teacher, Ms.
Jones, also found no limitations in this
domain, as did Dr. Heilpern. Accordingly, I
find that the claimant has no functional
limitations in this domain.

## c. Interacting and Relating with Others

This domain considers how well a child is
able to initiate and sustain emotional

connections with others, develop and use the
language of the community, cooperate with
others, comply with rules, respond to
criticism, and respect and take care of the
possessions of others. Interacting and
relating with others relates to all aspects
of social interaction at home, at school,
and in the community. Because communication
is essential to both interacting and
relating, this domain considers the speech
and language skills children need to speak
intelligibly and to understand and use the
language of their community (20 CFR
416.926a(i) and SSR 09-5p).

The claimant has no limitation in
interacting and relating with others. While
the claimant's mother alleges limitations in
this domain, there is no medical evidence to
support those claims. The claimant's
teacher, Ms. Jones, also found no
limitations in this domain, as did Dr.
Heilpern. Accordingly, I find that the
claimant has no functional limitations in
this domain.

### d. Moving About and Manipulating Objects

This domain considers how well a child is
able to move her body from one place to
another and how a child moves and
manipulates objects. These activities may
require gross motor skills, fine motor
skills, or a combination of both.
Limitations in this domain can be associated
with musculoskeletal and neurological
impairments, other physical impairments,
medications or treatments, or mental
impairments (20 CFR 416.926a(j) and SSR 09-
6p).

The claimant has no limitations in moving
about and manipulating objects. While the
claimant's mother alleges limitations in
this domain, there is no medical evidence to
support those claims. The claimant's

teacher, Ms. Jones, also found no
limitations in this domain, as did Dr.
Heilpern. Accordingly, I find that the
claimant has no functional limitations in
this domain.


### e. Caring for Yourself

This domain considers how well a child
maintains a healthy emotional and physical
state, including how well a child satisfies
her physical and emotional wants and needs
in appropriate ways. This includes how the
child copes with stress and changes in the
environment and how well the child takes
care of her own health, possessions, and
living area. (20 CFR 416.926a(k) and SSR
09-7p).

The claimant has no limitation in the
ability to care for herself. While the
claimant's mother alleges limitations in
this domain, there is no medical evidence to
support those claims. The claimant's
teacher, Ms. Jones, also found no
limitations in this domain, as did Dr.
Heilpern. Accordingly, I find that the
claimant has no functional limitations in
this domain.

### f. Health and Physical Well-Being

This domain considers the cumulative effects
of physical and mental impairments and any
associated treatments or therapies on a
child's health and functioning that were not
considered in the evaluation of the child's
ability to move about and manipulate
objects. Unlike the other five domains of
functional equivalence, which address a
child's abilities, this domain addresses how
recurrent illness, the side effects of
medication, and the need for ongoing
treatment affect the child's health and
sense of physical well-being (20 CFR
416.929a(l) and SSR 09-8p).

> The claimant has less than a marked
> limitation in health and physical well-
> being. The evidence shows that the claimant
> has ADHD; however, she attends Head Start
> five days a week. The treatment of ADHD
> requires her to take Risperdal and, if she
> is still taking it, Vyvanse. While these
> medications have not caused the claimant to
> have any side effects according to Dr. Syed,
> the mere treatment of these conditions would
> constitute some limitations in this domain.
> As such, I find that the claimant has some,
> albeit less than marked, limitations in this
> domain.
>
> Accordingly, this child does not have an
> impairment or combination of impairments
> that result in "marked" limitations in two
> domains of functioning or "extreme"
> limitations in one domain of functioning.
>
> **6. I find that the claimant has not been
> disabled, as defined in the Social Security
> Act, since March 5, 2009, the date the
> application was filed (20 CFR 416.924(a)).**

(Id. at 21-25) (emphasis in original).

Following the ALJ's determination on May 4, 2012, that the
claimant was not disabled, Plaintiff submitted additional
evidence to the Appeals Council consisting of treatment records
from Dr. Ashraf Syed dated June 4, 2012, through October 22,
2012, related to treatment for moderate mental retardation and
hyperactivity. (Id. at 9-12). These treatment notes consistently
reflect that the "child has been doing well and responded with
the medication fine." (Id.). Dr. Syed further noted improvement
in T.S.'s behavior and no side effects from her medication.

(<u>Id.</u>).  Plaintiff also submitted a Broad Functional Limitations form completed by Dr. Syed on June 4, 2012, in which he opined that T.S. had "marked" limitations in three functional domains (acquiring and using information, attending and completing tasks, and health and physical well-being).  (<u>Id.</u> at 30-31).  In addition, Plaintiff submitted a Child Progress and Planning Report from T.S.'s teachers, Terrell/Gwin, dated November 13, 2012, in which they stated that T.S. was at times "very social" and at other times did not like "certain kids to sit by her;" T.S. "likes to get her way;" T.S. knows "very few of her alphabets and very few numbers" and "is not able to recognize the alphabet or her name;" T.S. is very active; T.S. "speaks very well;" "teachers need to do one on one" with T.S.; and "parents need to reinforce things learned at school."  (<u>Id.</u> at 7).  The Appeals Council found that the additional evidence did not affect the decision about whether Plaintiff was disabled on or before May 4, 2012, and denied review.  (<u>Id.</u> at 1-2).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

1. <u>**Issues**</u>

**a. Whether substantial evidence supports the ALJ's determination that claimant is not disabled as a result of**

**her alleged mental retardation impairment?**

In her brief, Plaintiff makes several arguments related to the issue of whether substantial evidence supports the ALJ's determination that T.S. is not disabled as a result of her alleged mental retardation impairment. First, Plaintiff argues that the ALJ erred in failing to fully develop the record related to T.S.'s mental retardation. Specifically, Plaintiff argues that, although the ALJ did order one consultative examination following remand by the Appeals Council and did conduct an additional administrative hearing, he should have ordered a second consultative examination requiring I.Q. testing after the first consultative examiner, Dr. Blanton, determined that T.S. was too young for I.Q. testing.[5]  (Doc. 14 at 4).  In addition, Plaintiff argues that the ALJ erred in rejecting the opinion of T.S.'s treating neurologist, Dr. Syed, in favor of the opinion of T.S.'s teacher, Ms. Jones.  (Id. at 5-7). Plaintiff essentially maintains that the ALJ's determination that T.S. is not disabled as a result of her alleged mental

---

[5] As discussed herein, Dr. Blanton examined T.S. and completed his report on March 5, 2012, when T.S. was three years and nine months old, and he determined that T.S. was too young for intellectual testing.  (Tr. 435).  Dr. Blanton recommended that a formal intellectual evaluation be delayed for one year.  (Id. at 437).  The ALJ conducted the claimant's third administrative hearing on April 11, 2012, and issued his final decision on May 4, 2012.  (Id. at 17, 81).

retardation is not supported by substantial evidence. (Id. at 7-13).

The Commissioner counters that the ALJ fulfilled his duty to develop the record by ordering a consultative examination as instructed by the Appeals Council, that the ALJ had good cause to discredit the speculative opinions of treating physician Dr. Syed (that T.S. has mild to moderate mental retardation) and consultative examiner Dr. Blanton (*estimating* that T.S. has mild mental retardation), and that the ALJ's decision that T.S. is not disabled as a result of  mental retardation is supported by substantial evidence in the record. (Doc. 15 at 6-12). Having carefully reviewed the record, the Court agrees with Defendant that Plaintiff's claims are without merit.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence in support of her claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007). This duty to develop the record exists whether or not the claimant is represented by counsel. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).

42 U.S.C. 421(h) provides that "in any case where there is evidence which indicates the existence of a mental impairment," a determination that a claimant is not disabled "shall be made only if the Commissioner . . . has made every reasonable effort to ensure that a qualified psychiatrist or psychologist" has offered an opinion or reviewed the record. Id. Likewise, in McCall v. Bowen, 846 F.2d 1317, 1320 (11th Cir. 1988), the Eleventh Circuit stated that where there is evidence indicating the existence of a mental impairment, the Commissioner may determine that the claimant is not under a disability only if the Commissioner has made "every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." Id. (quoting 42 U.S.C. § 421(h) (internal quotation marks omitted). Later, in Sneed v. Barnhart, 214 F. Appx. 883, 886 (11th Cir. 2006) (unpublished), a panel of the Eleventh Circuit stated that "McCall interprets § 421(h) [to] require[] an ALJ to order a psychological consultation where there is evidence of a mental impairment." Id.

The ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence

for the administrative law judge to make an informed decision."); see also Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision.").

In this case, the Appeals Council remanded Plaintiff's claim on November 3, 2011, instructing the ALJ to obtain additional evidence concerning the claimant's "possible" impairment of mental retardation, to specifically include "a consultative psychological examination." (Tr. 125). The Appeals Council further instructed the ALJ to then determine whether the claimant's "possible" mental retardation was a severe impairment and, if so, to complete the sequential evaluation process. (Id.).

The ALJ complied with the first portion of the Appeals Council's mandate by obtaining a consultative examination from Dr. Donald Blanton, Ph.D., on March 5, 2012.[6] In his report, Dr. Blanton opined that T.S., who was three years and nine months old at the time, was "untestable" because of her age and "low concentration" and that testing should be "delayed for one year." (Id. at 436-37). Nothing in the record contradicts Dr.

---

[6] The ALJ subsequently determined that T.S.'s alleged mental retardation was not severe and that T.S. was not disabled as a result of that impairment, thereby complying with the second portion of the Appeals Council's mandate. (Tr. 21, 435).

Blanton's opinion that T.S. was "untestable" at that time due to her young age.   Thus, Plaintiff's argument that the ALJ should have ordered another consultative examination for the purpose of requiring formal I.Q. testing on T.S. is simply without merit.

Next, Plaintiff argues that the ALJ erred in rejecting the opinion of T.S.'s treating neurologist, Dr. Ashraf Syed, that T.S. was mildly to moderately mentally retarded.   (Tr. 395). Based upon a careful review of the record, the undersigned finds that Plaintiff's argument is again without merit.

Generally speaking, "[i]f a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight."[7]   Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)).

"An administrative law judge must accord substantial or considerable weight to the opinion of a claimant's treating physician unless good cause is shown to the contrary." Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985)(citations and internal quotation marks omitted).   "The

---

[7] "Controlling weight" is defined as a medical opinion from a treating source that must be adopted. See SSR 96-2P, 1996 SSR LEXIS 9, *3, 1996 WL 374188, *1 (1996).

requisite 'good cause' for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012).  "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence."  Id.  "[T]he weight afforded a treating doctor's opinion must be specified along with 'any reason for giving it no weight, and failure to do so is reversible error.'"  Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

In addition, the Social Security regulations and rulings require that an ALJ "consider all relevant evidence in the case record," and this includes opinion evidence from other non-medical sources.  SSR 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939, *4.  When evaluating child disability claims, teachers, as well as other non-medical personnel who are able to observe and interact with a child on a daily basis, are valuable resources in determining the severity of a child's impairment and how a child typically functions compared to other children his age. 20

C.F.R. § 416.913(d); 20 C.F.R. § 416.924a(a)(2)(iii) (in child disability cases, the ALJ considers school personnel assessments about how a child is functioning at school on a day-to-day basis compared to other children the child's age who do not have impairments).

"Social Security Ruling 06-03p, which addresses evidence from non-medical sources, provides that, where the non-medical source has seen the claimant in his or her professional capacity, the evaluation of that evidence is fact-specific, considering the nature and extent of the relationship between the source and claimant, the source's qualifications and expertise, the extent to which the source provides relevant evidence to support his or her opinion, and the consistency of that opinion with other evidence." Reed v. Astrue, 2009 U.S. Dist. LEXIS 99357, *7-8, 2009 WL 3571699, *2 (S.D. Ala. October 26, 2009) (unreported) (internal quotation marks omitted). "Under certain circumstances, the opinion of such a source may be entitled to greater weight than a medical source, even a treating source." Id.

In this case, the record shows, as the ALJ found, that Dr. Syed treated T.S. for approximately two years, from November 2010 to October 2012 for mild to moderate mental retardation and hyperactivity. (Id. at 9-12, 394-95, 407-11, 413, 425, 433, 439). At T.S.'s very first appointment with Dr. Syed on

November 11, 2010, Dr. Syed concluded, without testing, that T.S. had "moderate mental retardation (MR) with hyperactivity."[8] (Id. at 395). T.S. was two and a half years old at the time. (Id.). Dr. Syed made this diagnosis after noting that T.S.'s neurological and physical examinations were completely normal.[9] (Id. at 408, 410). It appears from Dr. Syed's treatment notes that the basis for his diagnosis of mental retardation was the mother's statements that the child was "very active and impulsive," that she was "aggressive" and unable to "sit still," that no one could keep her due to her behavior problems, that she was unable to talk, that she rocked back and forth, that she threw temper tantrums "hitting herself to the floor," that she did not sleep at night, and that the "mom [was] unable to control her." (Id. at 394-95). Dr. Syed noted that the mother was "requesting some drug intervention."[10] (Id. at 394). Based

---

[8] Dr. Syed opined that T.S.'s "cognitive maturity [was] below average," but that there was "no evidence of a progressive neurodegenerative disorder." (Tr. 395).

[9] In addition, Dr. Syed ordered EEG monitoring of T.S. to rule out seizures, and the results came back completely normal. (Tr. 408, 410). Genetic testing to rule out genetic causes of mental problems or disorders also came back completely normal. (Id. at 418).

[10] Similarly, on March 19, 2012, Dr. Syed's notes reflect that the mother and grandmother reported that the child was "extremely hyper, defiant, and difficult to manage" and requesting that he "increase the dosage of medicine because it's not helping enough." (Tr. 439). Dr. Syed refused to increase the dosage of Risperdal, but he added Vyvanse. (Id.).

on the mother's reports, Dr. Syed diagnosed moderate mental retardation and hyperactivity and prescribed Risperdal (for ADHD). (Id. at 9-10, 394-95, 407). In subsequent visits, Dr. Syed consistently noted "improvement in [T.S.'s] behavior" and that she was "doing well" and responding "fine" to medication with no side effects. (Id. at 9-10, 407, 410, 413, 433). Dr. Syed also consistently documented the absence of any neurological or physical problems, and he recorded no personal observations of behavioral problems similar to those reported by the mother. (Id.). To the contrary, Dr. Syed regularly noted that T.S. was "alert and cooperative" during her examinations and that he was "pleased to see the improvement" in her behavior. (Id. at 9-12, 407-10, 413, 425-26, 433, 439).

The record also shows that T.S. attended preschool in the Head Start program, and on February 16, 2012 (when T.S. was three years and eight months old), her teacher, Ashley Jones, completed a Teacher's Report, detailing her observations of T.S. (Id. at 266). In the report, Ms. Jones noted that T.S. "performs average academically in comparison to other children;" she "knows basic skills for her age group;" she "understands and comprehends the teacher's instruction[s];" she "understands the basic skills taught in the classroom;" she "plays cooperatively with the other children;" she makes friend[s] [and] seeks attention appropriately;" she "expresses herself very well;" she

"follows rules;" she "respect[s] [and] obey[s] adults;" she is only absent from school "when she has an asthma attack;" she "will listen" and "follows given instruction[s];" she "pays attention when spoken to directly;" she "stays focus[ed] and completes assigned tasks[s];" she "is able to change from one activity to the other without being disruptive;" she "plays cooperatively with her peers;" she "respects other children;" she "follows classroom rules;" she has no problems with age appropriate self-help skills such as grooming, toileting, dressing, and eating; her "strengths and weakness[es] are typical for her age;" "no special attention is needed from the teachers for [T.S.] to function in a normal classroom;" and T.S. has no physical problems.[11]  (Id. at 266-69).  Ms. Jones further completed a Broad Functional Limitations form stating that T.S. has "no limitations" whatsoever in any of the six functional domains.  (Id. at 268-69).

As the ALJ found, the record reflects a lack of objective evidence supporting Dr. Syed's opinions that T.S. has mild to moderate mental retardation.  Indeed, Dr. Syed's opinions are inconsistent with his own repeated observations that T.S. was alert, cooperative, doing well, and that her behavior was

---

[11] The Court notes that T.S.'s mother reported to Dr. Blanton the following month, in March 2012, that T.S.'s teachers complain that she does not "pay much attention" and "is always 'up and going.'" (Tr. 436).

consistently improving.  Moreover, Dr. Syed's opinions directly conflict with the fact-specific, detailed evaluation of T.S.'s preschool teacher, Ms. Jones, who observed T.S. on a regular, consistent basis at preschool and found T.S. to have no limitations in any of the functional domains, and, to the contrary, to be functioning on the same level as her peers. Given this evidence, the ALJ had good cause to discredit the opinion of T.S.'s treating physician, Dr. Syed, and to afford greater weight to the opinions of T.S.'s teacher, Ms. Jones. See Reed, 2009 U.S. Dist. LEXIS 99357 at *7-8, 2009 WL 3571699 at *2 (Under certain circumstances, a teacher's opinion may be entitled to greater weight than even a treating physician.).

   For the same reasons, the ALJ did not err in discrediting the March 5, 2012, opinion of consultative examiner, Dr. Blanton, Ph.D., that he "estimate[s]" that T.S. "may" have mild mental retardation.  (Id. at 435).  As the ALJ found, Dr. Blanton saw T.S. on one occasion, and he stated unequivocally that she was "untestable" because of her age (three years and nine months old) and "attention problems."  (Id. at 437).  Dr. Blanton recommended that formal intellectual evaluation be delayed for one year.  (Id.).  Nonetheless, his observations included that T.S.'s persistence and concentration were poor and that she had trouble identifying the shape of a ball or doing any type of calculation.  (Id. at 436).  However, he noted that

her conversation was "simple but logical;" her "associations were in tact; her insight was limited, but her judgment was fair for a child her age; her gross and fine motor skills were within normal limits; her affect was normal; she exhibited no confusion; her mood was normal; she was alert and able to follow one step directions; she correctly performed simple vocabulary words; and she could recite two digits forward. (Id. at 436). Despite these largely "normal" observations and the absence of any objective testing, Dr. Blanton opined that T.S. "may" have "mild mental retardation, estimated." (Id. at 437) (emphasis added). He further opined in a Broad Functional Limitations form dated April 11, 2012, that T.S. had "extreme" limitations in the domains of acquiring and using information and attending and completing tasks and "marked" limitations in the domain of interacting and relating with others. (Id. at 446). These opinions are directly contradicted by T.S.'s teacher, Ms. Jones, who stated unequivocally that T.S. had no limitations whatsoever in these domains, and to the contrary, that she performed average academically in comparison to other children, had basic skills for her age group, listened, understood, and comprehended the teacher's instructions, played cooperatively with and respected the other children, made friends, sought attention appropriately, expressed herself "very well," followed rules, respected and obeys adults, stayed focused, and was not

disruptive.  (Id. at 266-69).  Under the circumstances, the ALJ
had good cause to discredit Dr. Blanton's opinion, particularly
given the conflict with Dr. Blanton's own noted observations,
the lack of objective evidence, and the conflicting opinions of
T.S.'s teacher, Ms. Jones.  (Id. at 437).

In addition to the evidence discussed above, the ALJ found,
and the record confirms, that the medical expert who testified
at T.S.'s second administrative hearing, Dr. Juliette Hananian,
M.D., opined that without intellectual testing, it would not be
possible to diagnose mental retardation in T.S., adding that
mental retardation cannot be diagnosed on the basis of a
physical examination.  (Id. at 73-74).  Further, T.S.'s mother
testified at the third administrative hearing on April 11, 2012,
that T.S. had speech problems and could only say "small words"
like "dada," "mawmaw," and "bye bye."  (Id. at 95).  However,
T.S.'s teacher reported two months earlier, on February 16,
2012, that T.S. "knows basic skills for her age group" and
"expresses herself very well."  (Id. at 266).  Indeed, at the
third administrative hearing, T.S. (who was three years and ten
months old at the time) responded to questions from the ALJ, and
the transcript of that colloquy contradicts the mother's
testimony in this regard.  (Id. at 103-09).

Having reviewed the record at length, the undersigned
concludes that the ALJ's determination that T.S. is not disabled

as a result of mental retardation is supported by substantial evidence. In sum, the ALJ's decision reflects that he had before him sufficient evidence upon which to make his determination, that he thoroughly examined all of the record evidence, and that his determination that T.S. is not disabled is supported by substantial evidence. Accordingly, Plaintiff's claims are without merit.

> **b. Whether the Appeals Council erred in failing to adequately examine the additional evidence submitted by Plaintiff?**

Last, Plaintiff argues that the Appeals Council failed to adequately examine the additional evidence that she submitted after the ALJ issued his decision on May 4, 2012. (Doc. 14 at 14-17). Plaintiff argues that the new evidence, namely, a Broad Functional Limitations form completed by Dr. Syed on June 4, 2012; treatment records from Dr. Syed dated June 4, 2012 to October 22, 2012; and a Child Progress Report from T.S.'s teachers dated November 13, 2012 should have been considered by the Appeals Council because the new evidence relates to the period on or before the ALJ's decision on May 4, 2012. (Id. at 16; Tr. 7, 9, 31). The Commissioner counters that the new evidence is immaterial and does not, in any event, undermine the ALJ's finding of no disability. Having carefully reviewed the record in this case, the Court agrees that the Appeals Council

did not err in finding that Plaintiff's new evidence did not provide a basis for changing the ALJ's decision.

"With a few exceptions, the claimant is allowed to present new evidence at each stage of [the] administrative process." Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Id. (quoting 20 C.F.R. § 404.970(b)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Id. at 1262. Evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative outcome." Caulder v. Bowen, 791 F. 2d 872, 877 (llth Cir. 1986).

In this case, Plaintiff properly submitted the new evidence to the Appeals Council, as it was generated after the ALJ's decision dated May 4, 2012. The treatment notes of Dr. Syed dated June 4, 2012 to October 22, 2012, reflect continued follow up treatment for T.S.'s alleged mild to moderate mental retardation and hyperactivity and reflect that T.S. continued to do well, respond well to her medication, and improve in her

behavior.   (Tr. 9).   The Broad Functional Limitations form completed by Dr. Syed on June 4, 2012, reflects a restatement of his opinion that T.S. is mentally retarded.   (Id. at 30-31). Dr. Syed opined in the form that T.S. has "marked" limitations in three functional domains.   (Id.).   The Child Progress Report from T.S.'s teachers dated November 13, 2012, reflects that T.S. "speaks very well," that she is "sometimes very social" and sometimes does not like "certain kids to sit by her," that she is very active, that she knows only a few of her alphabets and numbers, and that she needs one-on-one attention from the teachers.   (Id. at 7).

Assuming, *arguendo*, that the new evidence is probative of the period in question, Plaintiff has failed to establish a reasonable possibility that the consideration of this evidence by the Appeals Council would have changed the administrative outcome.   First, the Court has already found in relation to issue one that Dr. Syed's opinion that T.S. is mildly or moderately mentally retarded is unsupported by any objective record evidence, is speculative, is inconsistent with Dr. Syed's own treatment records, and is inconsistent with the detailed observations of T.S.'s preschool teacher, Ms. Jones.   Thus, it was properly discredited by the ALJ and entitled to no weight. Likewise, the newly submitted Broad Functional Limitations form completed by Dr. Syed on June 4, 2012, which is merely a

restatement of his already discredited opinion, is entitled to no weight. (Id. at 31). Moreover, nothing in the remaining newly submitted evidence, *i.e.*, Dr. Syed's treatment records from June 2012 through October 2012 and the Child Progress Report dated November 13, 2012, suggests that Plaintiff is mentally retarded or that she is disabled as a result of her alleged mental retardation impairment. Therefore, even if the Appeals Council had granted review on the basis of Plaintiff's newly submitted evidence, there is no reasonable possibility that it would have changed the administrative outcome. Therefore, Plaintiff's claim is without merit.

**V.   Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for child supplemental security income be **AFFIRMED**.

**DONE** this **26th** day of **March, 2015**.

/s/ SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**
